**Daniel LOWE, Respondent,**

v.

**George LOMBARDI, Director of Division of Adult Institutions, Appellant.**

**No. WD 53720.**

Missouri Court of Appeals, Western District.

Dec. 23, 1997.

Jeremiah W. (Jay) Nixon, Atty. Gen., Eva Sterner, Asst. Atty. Gen., Jefferson City, for appellant.

Gary Sprick, Fayette, for respondent.

SPINDEN, Presiding Judge.

George Lombardi,[1] director of the Division of Adult Institutions in the Department of Corrections, appeals the circuit court's judgment reversing the decision of the Personnel Advisory Board (PAB) that the division's dismissal of a prison guard, Daniel Lowe, in 1995 was lawful. We affirm the PAB's decision.[2]

Lombardi fired Lowe in connection with Lowe's involvement in an altercation and death of an inmate, Bryant Miller, at the Boonville Correction Center on March 18, 1995. The guards were restraining Miller while a nurse injected medicine into him because Miller had refused to take the medicine. As Lowe and others restrained him, Miller hit, kicked, and tried to bite the guards. One of the guards, Kenneth Goodin, hit Miller 10 times in the side. A camera outside Miller's cell videotaped the incident.

In a letter informing Lowe that the division was dismissing him, Lombardi said:

> Although you reported in writing the force you used [to restrain Miller], you failed to accurately report the force used by CO III Kenneth F. Goodin.
>
> . . . .
>
> In your report, you basically only mentioned that "CO III Kenneth Goodin arrived and helped restrain Miller". You failed to mention you witnessed Lieutenant Goodin, in your presence, strike inmate

---

1. When the case was before the Personnel Advisory Board, it was entitled "In re Appeal of Daniel Lowe from Dismissal by Division of Adult Institutions." When Lowe filed his petition for judicial review, he captioned his action "Daniel Lowe v. George Lombardi." Lombardi signed the letter on behalf of the Division of Adult Institutions informing Lowe of the division's decision to terminate his employment.

2. Although the circuit court's judgment is the jurisdictional basis for our review of the case, we review the Personnel Advisory Board's decision, not the circuit court's. *Missouri Dept. of Corr. v. Cheeney*, 926 S.W.2d 939, 941 (Mo.App.1996).

Miller with his hand and fist multiple times in the back, lower back, and kidney areas.

As per Department and Institutional Policies and Procedures IS20–3.1, Use of Force Guidelines, and IS20–3.2, Use of Force Reports, staff involved in any use of force incident or a witness to such incidents or actions, are required to submit detailed statements in writing. The statements are to contain an accurate and precise account of the events that took place and the force actually used.

Investigation conducted clearly revealed you did witness the abuse of inmate Miller. Evidence presented is clear that the action taken by Lieutenant Goodin, and not reported by you, violated Department of Corrections and Institutional Policies and Procedures IS20–3.1 and IS20–3.2, as they pertain to the application of, and reporting of, use of force. The force applied to inmate Miller by Lieutenant Goodin, and witnessed by you, was unauthorized and should have been reported.

Your failure to report the use of force which you witnessed also violated Departmental Procedure D2–11.10 as outlined in the Missouri Department of Corrections Employee Handbook (1993), page 14, Reporting Misconduct/Mismanagement: 1. "Employees shall report when they have reasonable cause to believe that an offender has been abused."

Additionally it is noted that you completed Basic Custody Training on October 19, 1990. A portion of the basic training consisted of use of force application, reporting, and related issues.

. . . .

On April 12, 1995, you were interviewed by Chief Internal Affairs Officer Michael Payne and Investigator Raymond Newberry. During the interview, which was transcribed, you admitted you had discussed the investigation with Lieutenant Goodin after you had received the written directive from Superintendent Miller not to discuss the investigation with anyone. . . .

. . . .

Your actions were in violation of the lawful directive given by a supervisor. It is evident by your own admission and the evidence presented that you were in serious violation of Department of Corrections Use of Force Policies and Procedures on March 18, 1995, involving inmate Miller.

You failed to report accurately and precisely the force used as required and you were in violation of a written directive given by Superintendent Miller not to discuss the incident with anyone else.

For the reasons indicated, your services as a Corrections Officer II are terminated for the good of the service.

Lowe appealed his firing to the PAB. After an evidentiary hearing on February 8, 1996, before the PAB's hearing officer, the PAB issued these findings of fact:

1. The Appointing Authority[3] hired Daniel Lowe, the Appellant, as a Corrections Officer I on September 17, 1990. At the time of the dismissal, the Appellant worked as a Corrections Officer II at a monthly salary of $1628.

2. The Appointing Authority notified the Appellant of his dismissal by letter dated May 22, 1995. This letter advised Appellant of his dismissal effective May 31, 1995, and gave the Appellant an opportunity to respond to the charges contained therein prior to the effective date.

3. The letter informed the Appellant that the specific reason for the dismissal was his failure to precisely describe an incident involving use of force against an inmate in his initial written report after the incident and his failure to abide [sic] an instruction to avoid discussing the subject matter of the incident while an investigation was pending.

4. After considering all the evidence, the Board finds that the Appointing Authority has established, by competent and substantial evidence, by the evidence as a whole, and by a preponderance thereof, that on March 18, 1995, the Appellant assisted other corrections officers in restraining an inmate who had refused to take required medication and had resisted violently. During the restraint the Appellant observed a higher ranking officer strike the inmate several times. During the restraint the inmate died. In his ini-

---

3. The PAB was referring to the Division of Adult Institutions, Department of Corrections.

tial written report prepared shortly after the incident the Appellant did not mention seeing the higher ranking officer strike the inmate. A few hours later, in a video tape recorded interview conducted by a deputy sheriff, the Appellant vocally reported seeing the higher ranking officer strike the inmate during the restraint.

5. The Appointing Authority immediately began an investigation into the incident of restraint and the inmate's death. The Appointing Authority placed the Appellant on administrative leave and gave him written instructions to avoid talking about the subject of the investigation with "anyone." Approximately two weeks after the incident, the higher ranking officer who had struck the inmate telephoned the Appellant at his residence. The Appellant conversed with the higher ranking officer about rumors that some officers involved in the incident might face criminal charges and about the aspects of the restraint incident that might have caused the inmate's death.

6. The Appointing Authority's established procedures required all corrections officers who observed or participated in a use of force against an inmate to prepare a written report that included a "precise description of the incident" for the shift supervisor before leaving duty. The Appellant knew about that reporting requirement on March 18, 1995.

7. From the foregoing the Board concludes that the Appellant willfully violated the Appointing Authority's rule requiring that a written, "precise description" of a use of force be submitted to the shift supervisor before leaving duty. The Appellant also was insubordinate when he failed to follow a lawful instruction that he avoid discussing the subject matter under investigation.

The PAB concluded from these facts that Lowe's firing was lawful.

■ We must affirm the PAB's decision "unless it exceeds agency authority; it is not based upon substantial and competent evidence on the record as a whole; ... is unreasonable, arbitrary or capricious; ... involves an abuse of discretion; or ... is otherwise unlawful." *Missouri Department of Corrections v. Cheeney,* 926 S.W.2d 939,

941 (Mo.App.1996). Section 36.380, RSMo 1994, authorizes a state agency to dismiss an employee for cause "when [the agency] considers that such action is required in the interests of efficient administration and that the good of the service will be served thereby." In approving or disapproving an agency's dismissal, the PAB cannot substitute its judgment for the agency's in deciding what action is for the good of the service. *Cheeney,* 926 S.W.2d at 941. The same is true for the circuit court and this court in reviewing the case: We must not substitute our judgment for the agency's lawful exercise of discretion. We should alter an agency's decision only when the agency has exceeded its authority or acted arbitrarily and capriciously.

■ The circuit court reversed the PAB's decision on the ground that Lowe's violations of division policies and directives were "technical," and that dismissal was "unduly harsh." The circuit court rested its conclusion on its observation that Lowe's "technical violations ... appear to have had absolutely no impact upon the Division internal investigation prompted by the incident of 3–18–95."

We disagree. Viewing the evidence in the light most favorable to the PAB's decision, we find substantial and competent evidence supporting the PAB's decision that Lowe's violations were significant—more than mere "technical violations"—and willful.

In his argument to us, Lowe made the same appeal he made to the circuit court. He suggested that, because he had turned on a camera to tape the incident, his not reporting Goodin's action in his Inter–Office Communication (IOC) was insignificant. This fails to appreciate the division's appropriate concern that it be able to rely on its staff to document incidents completely in written reports. Cameras are vulnerable to misconstruing what they "see," too. Because they see clearly only what is in their field of focus, they can miss details which human eyes would detect. By the same token, videotape can retain information which can fade from, or become altered in, human memory. The division has a right to demand both methods of recordkeeping—the videotape and a complete written report—to complement one another. We agree with the PAB that the division's contention that a complete IOC was

more than a technical violation was reasonable.

The PAB obviously did not believe Lowe's explanation that he did not supply details of Goodin's beating in his IOC because he thought he should do separate IOCs—one telling what he did and another telling what others did. As the observer of the witnesses, the PAB's hearing officer was in a superior position to judge credibility of witnesses. That Lowe later supplied details to the division's investigator would not necessarily excuse his omission. The circuit court concluded that Lowe was "honest and forthright in all verbal disclosures." An equally plausible interpretation of Lowe's waiting to supply details—and apparently the one adopted by the division and the PAB—was that Lowe was "holding back" information until his "hand" was forced. Given the hostile, volatile environment in which the division must operate, it has a right to expect its officers to comply fully with its directives.

Pursuant to Rule 84.14, therefore, we enter the judgment which the circuit court should have entered. We affirm the PAB's decision.

LAURA DENVIR STITH and EDWIN H. SMITH, JJ., concur.